UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR UNITED WESTERN BANK,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES J. BERLING, et al.,<br><br>Defendants. | Case No. 15-mc-80150-JSC<br><br>**ORDER RE: MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENAS**<br><br>Re: Dkt. No. 1 |

The Federal Deposit Insurance Corporation ("FDIC") as the receiver for the United Western Bank of Denver, Colorado ("the Bank") sued nine former directors and officers of the Bank alleging breach of fiduciary duty, negligence, and gross negligence. The FDIC filed suit in the United States District Court for the District of Colorado in 2014. *FDIC v. Berling*, *et al*., No. 14-137-CMA-MJW (D. Colo.). As part of on-going discovery, Defendants issued two subpoenas seeking to depose non-parties Steven J. Harris and Kevin B. Swanson, Office of Thrift Supervision ("OTS") bank examiners who reside in this District. Defendants now move to compel the Office of the Comptroller of Currency (the successor agency to the OTS) to produce these examiners for deposition. (Dkt. No. 1.) Having considered the papers and having had the benefit of oral argument, the Court GRANTS the motion to compel.

## BACKGROUND

In 2011, the Bank closed and the FDIC was appointed as the receiver. Three years later, the FDIC initiated the underlying action in the Colorado District Court seeking $35 million in

damages based on allegations that the Defendants, nine former officers and directors of the Bank, recommended and approved loans that violated the Bank's lending policies and prudent, safe, and sound lending practices. (Dkt. No. 1-2 at 3[1] (Complaint ¶ 3).)  The FDIC further alleges that regulators warned Defendants of the risks inherent in their lending practices prior to issuance of the at-issue loans. (*Id.* at ¶ 21.)

The 12 loans at issue were made between November 2006 and August 2009.  From 2006 to 2009, federal bank examiners from the OTS conducted regular examinations of the Bank.  Pursuant to the Uniform Financial Institutions Rating System and applicable OTS guidance, the OTS examiners reviewed financial institutions, including the Bank, in six separate areas known as the "CAMELS" components, which stands for "Capital Adequacy," "Asset Quality," Management," "Earnings," "Liquidity," and "Sensitivity to Market Risk." *See* 62 Fed. Reg. 752, 753 (Jan. 6, 1997).

In November 2014, Defendants submitted an administrative request for information to the Office of the Comptroller of Currency ("OCC") seeking information related to the OTS's examinations of the Bank during the relevant time period. (Dkt. No. 1-2 at 56.)   In particular, Defendants sought documents regarding OTS examiners' review of several of the loans at issue and sought to depose four bank examiners, including current OCC employees, Steven Harris and Kevin Swanson, and former employees, Nicholas Dyer and Walter Santos. (Dkt. No. 12 at 56-60.)  After five months of administrative process, the OCC denied the request for the depositions, but granted some of the requests for documents. (Dkt. No. 1-3 at 25.)  Defendants thereafter issued subpoenas to the two OCC employees residing in this District: Steven Harris, the OTS Examiner-in-Charge of the 2007 examination, and Kevin Swanson, the OTS Field Manager for the examinations conducted in 2005, 2006, 2007, and 2009.[2]  The OCC notified Defendants that Messrs. Harris and Swanson would not appear for deposition, and Defendants thereafter filed the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Defendants subpoenaed Mr. Santos as well and moved to compel compliance with that subpoena in the United States District Court for the Central District of California.  *See FDIC v. Berlin*, No. 15-mc-18, (C.D. Cal. Jun. 1, 2015).  However, following briefing and after a preliminary hearing, the OCC withdrew its opposition to the subpoena. (*Id*. at Dkt. No. 26.)

underlying motion to compel compliance with the subpoenas.  (Dkt. No. 1-3 at 35 (Harris Subpoena), 38 (Swanson Subpoena), 43 (email re: OCC's position).)

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b).  Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b).").  Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1).

A court must protect a nonparty subject to a subpoena if the subpoena "requires disclosure of privileged or other protected matter" or the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).  A court must also limit discovery if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12–MC–80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (internal citation omitted).  "[I]f the sought after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed ... would be by definition undue." *See Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995).

## DISCUSSION

Defendants contend that the depositions are relevant to demonstrate that their actions met the standard of care, and to test the FDIC's allegation that Defendants ignored the regulators' warnings as to some of the loans at issue.  Defendants further assert that this information is not otherwise available from another source.  The OCC, on behalf of non-parties Messrs. Harris and Swanson, contends that Defendants have failed to establish that the depositions would yield any

1  relevant information, and even if the information were relevant, it is equally available from the
2  documents available to Defendants and unduly burdensome.  Because the Court concludes that the
3  discovery sought is relevant given the FDIC's allegations, and otherwise satisfies the
4  proportionality requirements of Rule 26(b)(2), Defendants' motion to compel is granted.

### A. The Deposition Testimony Sought from Messrs. Harris and Swanson is Relevant

The starting point in the Court's analysis is the question of relevance.  The district court in the underlying action here recently considered a related question regarding the relevance of OTS documents regarding the Bank's overall regulatory ratings in two specific quality-control categories.  The court was persuaded by Defendants' argument that "the records w[ould] shine light on their conduct—specifically, whether they followed their internal policies generally, and whether they met their standard of care generally" and ordered the FDIC to produce the OTS documents sought.  *FDIC v. Berling*, et al., No. 14-137-CMA-MJW, Dkt. No. 78 (D. Colo. Jun. 16, 2015) (submitted here at Dkt. No. 15-3 at 2.)  The OCC attempts to distance itself from this ruling by arguing that there is a difference here because it dealt with documents, not depositions; but this distinction—to the extent that it is actually a distinction—is one without a difference.  The relevance analysis applies equally to both forms of discovery.

Even if the Court did not have the benefit of the underlying court's determination regarding relevance, Defendants have independently demonstrated the relevance of the OTS examiners' testimony.  The OCC does not dispute that the bank examiners were charged with evaluating (1) the Bank's strategic lending plan and risk tolerance levels, (2) adequacy of the Bank's polices, practices, and procedures regarding lending activities, (3) conformance with established policies and procedures, (4) adequacy of risk management practices, (5) the overall risk profile of the loan portfolio, and (6) the overall strengths and weakness of the lending function.  (Dkt. No. 1-4 at 22 (excerpts from the OTS Examination Handbook).)  Mr. Harris was the Safety and Soundness Examiner-in-Charge for OTS's 2007 examination report, and as such he both signed the report and attended the exit meeting with the Bank's management and board.  Mr. Swanson was the Field Manager for the exams in 2005, 2006, and 2007, and according to Defendants, he would have been involved in assigning the overall rating for the Bank including

the Asset and Quality Management rating.  Both are thus likely to have relevant, percipient information regarding the whether the Bank's lending practices were in accordance with the standard of care and whether Defendants ignored risks communicated to them by regulators.

Further, discovery into the regulatory examination and loan review process is routinely permitted in these cases.  In *FDIC v. Wise*, 139 F.R.D. 168 (D. Colo. 1991), the court held that the FDIC had "affirmatively placed [regulatory documents] at issue" by alleging that federal regulators had disapproved of the financial institutions lending policies and management and opposed the institution's growth, such that "allowing [the FDIC] to assert privileges to protect against disclosure of the[] documents would be manifestly unfair to defendants." *Id*. at 172.  *See also FDIC v. Clementz*, No. 2:13-CV-00737-MJP, 2014 WL 4384064, at *1 (W.D. Wash. Sept. 4, 2014) (holding that internal regulatory documents  regarding the FDIC's contemporaneous evaluation of the at issue loans were "relevant to the propriety of the approval of specific loans"); *FDIC v. Dosland*, No. 13-4046-MWB, 2014 WL 1347118, at *4 (N.D. Iowa Apr. 4, 2014) (holding that internal OTS documents could be probative of defendants' claims that they did not violate the applicable standard of care in response to the FDIC's allegations that the defendants acted imprudently with certain investments).

The OCC's reliance on *FDIC v. Reis*, No. 12-02212, 2014 WL 7840283 (C.D. Cal. June 12, 2014), is misplaced.  In *Reis*, the district court denied a motion to compel depositions of two examiners concluding that the defendants had failed to show what particular relevant evidence the bank examiners might have about the claims at issue.  Here, in contrast, Defendants have persuasively demonstrated that the information sought from Messrs. Harris and Swanson regarding their evaluation of the soundness of the Bank's underwriting and credit practices, adherence to loan policies, and management oversight is directly relevant to whether Defendants violated the standard of care, as well as to refute the FDIC's claim that Defendants ignored regulators' warnings regarding investment risks. *Compare* Dkt. No. 1-2 at 3, 38-39 (Complaint at ¶¶ 3, 168, 178) *with* Dkt. No. 15-9 at 6 (Lending Overview Questionnaire: "are the association's underwriting policies, procedures, and controls adequate to prevent unsafe and unsound lending practices), Dkt. No. 15-11 at 11 (Examination Objectives: "assess the adequacy of underwriting

5

for new or high growth lending programs" and "review...whether assets were underwritten in a prudent manner, in compliance with the association's policies").

### B. The Discovery Otherwise Satisfies Rule 26's Proportionality Requirement

Under Federal Rule of Civil Procedure 26(b)(2)'s proportionality principle courts should limit discovery where it determines that "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The OCC's arguments in this regard are two-fold. First, that the discovery sought is cumulative and duplicative of documentary evidence and the forthcoming testimony from Mr. Santos, the Examiner-In-Charge for 2005 and 2006. Second, that the burden of preparing Messrs. Harris and Swanson for deposition and having them sit for deposition outweighs any potential benefit. The Court disagrees on both accounts.

First, the OCC contends that the information sought is equally available from documents it has otherwise made available to Defendants, including the entire supervisory record regarding the Bank, and the Bank's reports of examination. Defendants, however, persuasively counter that documentary evidence is not equivalent because the documents produced are summary documents and lack the level of detail that could be obtained through examiner testimony which would fully develop the record regarding the factual bases for the conclusions therein. Moreover, to the extent that there are loan specific documents, Defendants contend that they have been destroyed. In particular, Defendants contend that OTS destroyed the loan-specific workpapers the examiners created during their examinations, and has only produced 24 pages of internal OCC documents, and of the documents ordered produced in the underlying action, the OCC has allegedly represented that they will not contain loan-specific references. Further, any documents would not necessarily reflect any oral communications between the examiners and Bank personnel. As to any potential for cumulative or duplicative testimony given the forthcoming deposition of Mr. Santos, by the OCC's own admission his testimony would only cover two of the years at issue, and not the years covered by Messrs. Harris and Swanson.

As to burden, the OCC's asserted burden is that preparing for and submitting to a deposition will take two commissioned bank examiners away from their assigned duties. Any such burden is outweighed by Defendants need for this discovery. The examiners' assessments of the Bank's underwriting practices, particularly with respect to many of the at-issue loans, are directly relevant to the claims and defenses raised in this action. As the underlying court concluded when considering Defendant's motion to compel related documents, the question at this juncture is not admissibility, but rather, whether the evidence is probative.[3] *See FDIC v. Berling*, et al., No. 14-137-CMA-MJW, Dkt. No. 78 (D. Colo. Jun. 16, 2015) (submitted here at Dkt. No. 15-3 at 4-5) ("[t]he documents may ultimately prove inadmissible for a variety of reasons. But either way, they might nonetheless contain information leading to the discovery of admissible evidence."). And the Court here concludes that it is.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel is GRANTED. (Dkt. No. 1.) The OCC shall produce Messrs. Harris and Swanson for deposition. Counsel shall meet and confer regarding scheduling of the depositions at the convenience of the deponents within the parameters of the discovery deadline in the underlying action. Each deposition shall not exceed seven hours in a single day.

The Clerk shall close this action.

**IT IS SO ORDERED.**

Dated: July 10, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[3] The OCC makes a perfunctory argument that the information sought from Messrs. Harris and Swanson is subject to the deliberative process privilege, but does not formally invoke the privilege as a basis for denying the motion to compel.